IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARVIN L. VIGIL,

    Plaintiff,

vs.

CITY OF ESPANOLA, JOSEPH
MAESTAS, Mayor of the City of
Espanola and in his individual capacity,
ALICE LUCERO, City Councilor and in
her individual capacity, ALFRED
HERRERA, City Councilor and in his
individual capacity, ROSARIO (CHAYO)
GARCIA, City Councilor and in her
individual capacity, DENNIS TIM
SALAZAR, City Councilor and in his
individual capacity, CECILIA LUJAN,
City Councilor and in her individual
capacity, HELEN CAIN SALAZAR, City
Councilor and in her individual capacity,
EDDIE MAESTAS, City Councilor and in
his individual capacity, DANIELLE
DURAN, City Councilor and in her
individual capacity, JAMES IVAN
GUILLEN, acting City Manager,

    Defendants.

No. 07cv1156 PK/WDS

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of pending motions: (1) Plaintiff's

Motion for Partial Summary Judgment that Marvin Vigil Could Only Be Terminated for

Cause, by the City Manager and With Written Reasons filed June 17, 2008 (Doc. 66); Defendant City of Espanola's Motion for Summary Judgment as to Plaintiff's Breach of Contract and Due Process Counts filed July 15, 2008 (Doc. 74), and Defendant City of Espanola's Motion for Summary Judgment as to the Remaining Retaliation Counts filed July 15, 2008 (Doc. 73). Upon consideration thereof, the court finds that the Plaintiff's motion is not well taken and should be denied, and that the Defendant's motions are well taken and should be granted.

Background

The following facts are undisputed. Plaintiff became planning director of the City of Espanola ("City") on September 20, 1995. Doc. 74 at 2, ¶ 2. The position required a bachelor's degree in planning-architecture or a related field. Id. at 2, ¶ 3. Although Plaintiff represented that he had such a degree, the City learned in this litigation that he does not. Id. at 2, ¶ 4; id. at 4, ¶ 10.

The City has adopted a personnel merit system pursuant to N.M. Stat. § 3-13-4, consisting of City Ordinance No. 472 and corresponding Personnel Rules and Regulations adopted November 13, 1990. Id. at 3, ¶ 5. The Ordinance provides in pertinent part:

> Those employees designated as exempt, not necessarily FLSA exempt, are covered by the Personnel Ordinance and entitled to the same rights and privileges afforded other employees, *except for the rights and privileges of selection, appeal of disciplinary action, grievance procedures or dismissal.* Such employees include: (1) The City Manager, City Attorney, City Clerk, Chief of Police, and directors of departments and employees with base

> salaries over $36,000 or designated as exempt by the City Manager and approved by the governing body.

Id. at 3, ¶ 6 (citing Ordinance 472 at § 2-74(b)); Doc. 45, Ex. B at 5 (emphasis added). The Personnel Rules and Regulations contain a similar provision. Doc. 74 at 3, ¶ 6; Doc. 45, Ex. C at 8, § 2.4(B). In 2001, Plaintiff testified that in a deposition that he believed his job was an exempt position, and that insofar as any termination that he "serve[d] at the pleasure of the Mayor." Doc. 74 at 3, ¶ 7; Doc. 45, Ex. A at 6. He further testified as to his understanding that anyone making over a certain amount was exempt given the language of the personnel policy. Doc. 45, Ex. A at 6.

On January 5, 2006, Plaintiff became the acting city manager until early March 2006. Doc. 66 at 3, ¶ 4; Doc. 73 at 2, ¶ 1. On March 28, 2006, after an election, the city council held an organizational meeting and voted on whether to confirm thirty-seven exempt employees; the council voted 8-0 not to confirm Plaintiff. Doc. 74 at 3, ¶ 8; Doc. 73 Ex. C at 5; N.M. Stat. §§ 3-11-5(A) (providing that the mayor shall submit names for confirmation); 3-11-6(D)(1) (providing that the governing body, here the city council, subject to limitations of merit system ordinance, may discharge an employee). The mayor submitted the names for confirmation along with his recommendation; of ten department heads, five were confirmed, one was confirmed on probationary status, and four, including the Plaintiff were not. Doc. 73, Ex. C at 4-5. Plaintiff was terminated the next day with the following personnel action comments: "Exempt employee not

confirmed for continued employment by the City Council." Doc. 74 at 3, ¶ 8; Doc. 66, Ex. 5.

Plaintiff has dropped all claims against the individual Defendants, only certain claims against the City remain. See Doc. 30 at 2. Plaintiff's Second Amended Complaint contains the following claims:

- Count I—Violation of Plaintiff's Right to Freedom of Speech. This count was dismissed by the court for failure to state a claim on motions by the City. Docs. 59 & 72.

- Count II—Violation of the Plaintiff's Right of Intimate Association.

- Count III—Violation of the Plaintiff's Right to Hold Political Positions and Associate Freely with Persons of Similar Persuasions. Plaintiff concurs in summary judgment in favor of the City on this count. Doc. 81 at 1.

- Count IV—Breach of Contract.

- Count V—Violation of Procedural Due Process Rights.

Doc. 63.

## Discussion

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In applying this standard, the court reviews the evidence in the light most favorable to the nonmoving party. Federal Election Comm'n v. Wisconsin Right To Life, Inc., 127 S. Ct. 2652, 2697 n.12 (2008). The party seeking summary judgment must inform the district court of the basis for its motion. Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986). Thereafter, the non-moving party must go beyond the allegations in the complaint and come forward with significantly probative evidence that would support a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also D.N.M. LR-Civ. 56.1(b). While the evidence need not be in a form that would be admissible at trial (affidavits are sufficient), the non-movant cannot rely on hearsay that would be inadmissible in any form at trial. Celotex, 477 U.S. at 324; Argo v. Blue Cross & Blue Shield of Ks., 452 F.3d 1193, 1199 (10th Cir. 2006). It follows that summary judgment is appropriate if a party cannot make an adequate showing on an essential element of his case on which he has the burden of proof. Celotex, 477 U.S. at 322.

    A.    Counts IV and V

Essentially, the parties have submitted cross-motions for summary judgment on counts IV and V. In count IV, Plaintiff claims that the City breached its contract with him under the City's merit system ordinance by terminating him as planning director without action by the city manager, without cause and without written notice. Doc. 63 at 10, ¶ 60. In count V, Plaintiff claims a deprivation of procedural due process, specifically the lack of pre-termination procedure. Id. at ¶ 64. Plaintiff contends that he should have received notice of the City's intent to terminate him and an opportunity to respond. Id. He alleges that such pre-termination procedures were especially important because as an exempt employee he was not entitled to post-termination remedies. Id. at ¶ 65.

The City moves for summary judgment on the basis that Plaintiff cannot demonstrate that he was anything other than an at-will employee. Therefore, he could be

terminated with or without cause, and lacked a property interest in his continued employment, a prerequisite for his due process claim. Because the court is persuaded by the City's argument, it is unnecessary to address the City's arguments that any contract with the Plaintiff is voidable because of material misrepresentations about his degree status. Doc. 74 at 7-9.

New Mexico law provides that the governing body may discharge an employee subject to the limitations of any merit system ordinance. N.M. Stat. Ann. § 3-11-6(D). Appointed officials may not be placed under a merit system ordinance, see Webb v. Village of Ruidoso Downs, 871 P.2d 17, 20-21 (N.M. Ct. App. 1994), but the dispute in this case involves the extent to which an exempt employee like the Plaintiff is covered. Neither party disputes that a municipality may make some (but not all) merit system provisions applicable to an exempt employee. In the absence of an *applicable* provision limiting the City's discretion to terminate the Plaintiff, he was an at-will employee who could be terminated for good cause or no cause without any breach of contract. Silva v. American Federation of State, County & Municipal Employees, 37 P.3d 81, 83 (N.M. 2001). Likewise, in the absence of an applicable provision, he lacked a legitimate expectation of continued employment (a property interest), and cannot maintain a procedural due process claim. Board of Regents v. Roth, 408 U.S. 564, 576-78 (1972). While such a provision might be found in an ordinance, see Bishop v. Wood, 426 U.S. 341, 344 (1976), Plaintiff's arguments that he is covered by certain provisions that would limit the discretion of the City are unavailing.

Plaintiff notes that Ordinance No. 472 divides all employees into "classified service" or "exempt service." Doc. 45, Ex. B at 10 (§ 2-95). He contends that employees in "exempt service" are entitled to various protections afforded under the ordinance including termination for cause,[1] only by the city manager who has the sole authority to employ and discharge city employees, and written notice of the reasons for termination. See Doc. 66 at 3-4, ¶¶ 6-12; id. at 6. These mechanisms are available, according to the Plaintiff, because certain provisions dealing with the rights of exempt employees do not expressly exclude these protections; rather, the only rights excluded are those pertaining to selection of employees and internal appeals by employees. Doc. 66 at 6.

This argument, though resourceful, is belied by the structure and language of the provisions which the court finds clear and unambiguous.[2] In discussing coverage, the

---

[1] It should be noted that the "for cause" provision is limited to regular employees—the ordinance provides that reason for termination may include "dismissal of a *regular employee* for cause in accordance with the City Personnel Ordinance." Doc. 66 at 4, ¶ 9 (citing Ordinance 472, § 2-96(a)(3)) (emphasis added); see also Doc. 45, Ex. B at 1 (§ 2-72(g) defining "class regular appointment" as "employment of a person the day following the end of a probationary period upon the approval of the city manager."); id., Ex. C at 7 (Personnel Rules and Regulations definitions containing similar definition of "regular employee"); id., Ex. C at 30 (§ 7.7(C) limiting "just cause" provision to regular employees.).

[2] Plaintiff also argues that the intent of Ordinance No. 472 and the Personnel Rules and Regulations was to protect exempt employees from arbitrary dismissal because of other language in those documents that suggests "at will" treatment for certain positions, specifically that a grievance review board member may be discharged by the governing body "with or without cause" and that probationary employees may be dismissed "for any reason the employer deems appropriate." Doc. 66 at 9 (citing Ordinance § 2-105(d) available at Doc. 45, Ex. B at 13); id. (citing Personnel Rules and Regulations § 7.7(A) & (B) available at Doc. 66, Ex. 12). It was unnecessary to use a variation on the above language because both the Ordinance and Personnel Rules and Regulations specifically

ordinance generally states that exempt employees are entitled to the rights and privileges contained in the ordinance, but it then specifically states "except for the rights and privileges of selection, appeal of disciplinary action, grievance procedures or dismissal." Doc. 45, Ex. B at 5 (§ 2-74(b)).  The Personnel Rules and Regulations contain a similar provision.  Doc. 45, Ex. C at 8 (§ 2.4(B)).  Unlike the Plaintiff, the court reads the rights and privileges *excluded* as three independent phrases and encompassing: (1) selection, (2) appeal of disciplinary action, and (3) grievance procedures or dismissal.  Plaintiff's construction—that items (2) and (3) both pertain to appeals, i.e. appeals of grievance procedures and appeals of termination—is not persuasive.

The Ordinance makes it clear that the "for cause" provision, and any grievance arising out of a notice of termination apply to regular (non-exempt) employees.  Doc. 45, Ex. B at 11 (§ 2-96(a)(3) (for cause dismissal for regular employees)), at 13 (§ 2-104 (regular employee may file a grievance upon notice of termination).  The Personnel Rules and Regulations also make this distinction.  Doc. 45, Ex. C at 30 (§ 7.7(C) (regular employee may be dismissed only for just cause) and § 7.7(D) (pre-termination procedures for regular employees), at 32 (§ 8.2(A) (regular and term-grant funded, non-probationary employees have right to utilize Grievance Review Board).  Moreover, appeals of "grievance *procedures*" (as opposed to a personnel action or decision, or decision on a

---

exclude exempt employees from coverage when it comes to selection, appeal of disciplinary action, grievance procedures or dismissal.  The fact that the City would later amend its Personnel Rules and Regulations to supplement the definition of an exempt employee as an "at will" employee, Doc. 66, Ex. 13 (§ 1.5, definition of "Exempt Employee"), does not alter this interpretation—Plaintiff was an at-will exempt employee.

grievance) seem unlikely; the grievance procedure envisions exhaustion of the grievance with the city manager and if the grievance is not resolved to the satisfaction of the grievant, a hearing by the Grievance Review Board and a non-appealable final decision. Doc. 45, Ex. C at 33-34 (§§ 8.6, 8.7). A more natural reading of this language is that exempt employees lack the rights and privileges attendant to the grievance procedures or termination, including pre-termination procedures, as set out in the Ordinance and Personnel Rules and Regulations.

 Plaintiff contends that another limiting provision in the Ordinance supports his interpretation: "They [exempt employees] may not, however, appeal disciplinary action or dismissal through the procedures provided in the City Personnel Ordinance." Doc. 66 at 3, ¶ 6 (citing Ordinance No. 472, § 2-95). According to the Plaintiff, this provision makes it clear that only rights of appeal concerning disciplinary action or dismissal are withdrawn from the exempt employees; pre-termination procedure is unaffected. The problem with this construction is that both the Ordinance and the Personnel Rules and Regulations contain the broader exclusion in the coverage sections (as discussed above) and the provisions of both documents can easily be read as internally consistent and consistent with one another. Moreover, the procedural protections requiring notice and an opportunity to respond contained in the Personnel Rules and Regulations are for "regular employees." Doc. 45, Ex. C at 30 (§ 7.7(D)).

 Plaintiff also contends that only the city manager had authority to terminate him. Notwithstanding that the Ordinance indicates that the city manager has the sole authority

to discharge employees, Doc. 45, Ex. B at 8 (§ 2-85), the statute merely provides that the city manager shall "discharge all persons in the administrative service of the municipality," N.M. Stat. § 3-14-14(A)(2), and the New Mexico Court of Appeals has indicated in similar circumstances that a governing body by majority vote may indeed terminate. Sanchez v. City of Belen, 644 P.2d 1046, 1048-49 (N.M. Ct. App. 1982). Given that the governing body plainly has such authority, and the merit system ordinance is pursuant to the statute, N.M. Stat. § 3-11-6(D)(1), any other reading would elevate form over substance. Moreover, as the City points out, the city manager is an exempt employee, and no one would suggest that he must terminate himself before such action would be valid—the governing body plainly has such power. See Doc. 45, Ex. B at 5 (§ 2-74(b)(1)). Finally, the opinions of former city managers and officials offered by Plaintiff as to the broad scope of the City's merit ordinance vis-a-vis exempt employees, Doc. 79 at 5-6; Doc. 80 at 4-5, certainly cannot overcome the clear statutory language and interpretation by the New Mexico courts and these opinions do not create a genuine issue of material fact.[3]

    B. Count II

---

[3] It bears mentioning that another judge in this district recently rejected similar contract and due process claims asserted by the City's former personnel director and granted a motion to dismiss for failure to state a claim. The court held that the personnel director was an exempt employee not entitled to rely upon the protections afforded regular employees in the City's merit system, i.e. termination by the city manager, for cause, and with notice and a hearing. Kollecker v. City of Espanola, No. Civ 08-428 BB/WDS, slip op. at 6-7 (D.N.M. Aug. 7, 2008). Though the personnel director did not file a response to the City's motion to dismiss, the court dismissed on the merits (not by default) after considering similar provisions.

The City also moves for summary judgment on Count II. In that count, Plaintiff contends that the city council's action to terminate him violated his right to associate with his then-wife, a lawyer. He maintains that he was terminated from his job as planning director for a variety of reasons including his opposition to a project by then-councilor, now mayor Joseph Maestas, and because his then-wife successfully sued to remove certain candidate's names from the ballot in a municipal election and challenged the City's ward system. Doc. 63 at 4, ¶¶ 17-18; id. at 6-7, ¶¶ 37-42; Doc. 81 at 2-3. All the candidates were allowed to run as write-in candidates. Doc. 73 at 8, ¶ 20. Plaintiff maintains that the candidates ultimately elected, including the mayor, regarded the lawsuit as a political challenge to their slate of candidates and some of them intervened in the lawsuit. He relies upon a conversation in which a declarant overheard the mayor stating that "the first person I am going to fire as soon as I take office will be Marvin Vigil." Doc. 81, Ex. 3 at 12. He also relies upon the proximity of the election challenge and the unusual manner in which his termination was handled. Doc. 81 at 4.

Both the Plaintiff and Defendant agree that this claim is one of interference with familial association based upon the First Amendment.[4] See Trujillo v. Board of County

---

[4] See Roberts v. U.S. Jaycees, 468 U.S. 609, 619-20 (1984) (Constitution protects highly personal family relationships). There has been some debate in the Tenth Circuit concerning where such a right originates from. Compare Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 658 (10th Cir. 2006) (First Amendment) with Griffin v. Strong, 983 F.2d 1544, 1547 (10th Cir. 1993) (Fourteenth Amendment substantive due process). In Griffin, the Tenth Circuit endorsed a balancing test to determine whether a state actor's conduct "constituted an undue burden" on a plaintiff's right to familial association, after considering the "severity of the alleged infringement, the need for the defendant's conduct, and any possible alternatives." Griffin, 983 F.2d at

Comm'rs, 768 F.2d 1187, 1188-90 (10th Cir. 1985) (freedom of intimate association); see also Adler v. Pataki, 185 F.3d 35, 44 (2d Cir. 1999). According to Plaintiff, while the mayor and the city council may not have been trying to break up his marriage per se, they sought to penalize him for it with the following message: "Don't marry somebody who challenges elections." Doc. 81 at 6 (response to undisputed fact no. 21); see also Doc. 73, Ex. A at 140. As in Adler, the City has chosen to defend this claim on the basis that the mayor and the city council acted based on their perception of Plaintiff's performance, rather than to sanction him for his then-wife's representing clients pursuing an election challenge. Doc. 73 at 3-6, ¶¶ 5-14. Councilors reported complaints that Plaintiff was rude and unresponsive (either based on personal interaction or reports of constituents) and there was concern about pay raises given to City employees while Plaintiff was Acting City Manager. Additionally, some disagreed with recommendations made by Plaintiff in his capacity of planning director. Plaintiff responds by objecting to the hearsay nature of statements (from constituents or others) reported by councilors, and argues that the criticism is unfounded for a variety of reasons. For example, the city council made the

---

1547-48. A plaintiff is required to show that the state actor directed his conduct at the familial relationship "with knowledge that the . . . conduct will adversely affect that relationship." Id. at 1548; see also Trujillo, 768 F.2d at 1190 (requiring intent to interfere with the relationship). In this case, the evidence does not suggest that the mayor and city council *actually* interfered with, or placed an undue burden on, his familial relationship with his wife. See Lyng v. Int'l Union, 485 U.S. 360, 365 (1988); Doc. 73, Ex. A. at 192-193 (former wife has been supportive). Nor, as discussed below, does the evidence suggest an intent to interfere with that relationship. Therefore, whether this claim is addressed under the First Amendment, as the parties argue, or under the Fourteenth Amendment, the Plaintiff has no actionable claim that could survive summary judgment.

-12-

ultimate decisions concerning zoning approvals, and that some of the criticism does not relate to his regular position of planning director.  He also contends that certain statements are implausible—particularly claims that two councilors were unaware of the election challenge where his then-wife served as counsel.

     First, the City is not offering the statements that councilors claimed to have heard from constituents and others for the truth of the matters asserted, Fed. R. Evid. 801(c),—rather, those statements are to show the councilors' state of mind when they terminated the Plaintiff.  Given that the statements are not inherently irrational, there is little reason to disregard them insofar as establishing a non-invidious state of mind for the councilors' action.  After all, what matters is that the reasons advanced not be a mask for discrimination based upon mere familial association, not whether those reasons are correct are not.  Second, even granting that *some* councilors (and undoubtedly the mayor) were aware of the role of Plaintiff's then-wife in the election challenge (one councilor and the mayor  intervened), the summary judgment evidence is not sufficient to sustain a verdict finding that the city council in its unanimous vote acted with the specific intent to deprive Plaintiff of or interfere with his relationship with his then-wife.

     The uncontroverted evidence demonstrates a strong and persistent conflict as to matters of style and substance between the mayor and the Plaintiff dating back to their initial meeting when the mayor was a new councilor.  Plaintiff has acknowledged as much.  Doc. 73 at 20-21 & Ex. A at 42-47.  The mayor has exhaustively set forth his policy disagreements with the Plaintiff's tenure, Doc. 73 at 15-19, and explained that he

viewed the organizational meeting as an opportunity to terminate exempt employees without the need to show cause.  Doc. 81, Ex. 6 at 95.

The fact that the mayor and the newly-elected councilors (along with those continuing in office) used an apparently lawful means to review department heads and terminate some of them does not suggest an irregular procedure designed to interfere with a protected relationship, however.  Thus, the court rejects the suggestion that the timing of Plaintiff's termination after his then-wife's involvement in an election challenge renders the procedure suspect.  All department heads were reviewed; several did not enjoy the support of the governing body and were terminated.  To suggest that the procedure was designed only for the Plaintiff is contrary to what occurred.  Moreover, the fact that Plaintiff's job was difficult, and perhaps made more difficult by the mayor, or that the political dissatisfaction with the Plaintiff did not result in formal complaints with notice and opportunity to be heard, does not suggest an invidious motive to terminate an exempt employee based upon a protected association.  Any other ruling on the facts of this case would infringe upon the governing body's prerogative to fill exempt positions.

To be sure, the strongest evidence that Plaintiff marshals is the mayor's statement that he would fire Plaintiff first thing apparently after a hearing in the election challenge litigation.  On this record, however, it is insufficient to create a genuine issue of material fact whether the Plaintiff's termination was on account of his association with his then wife.  Certainly, the mayor made the recommendation that Plaintiff not be confirmed, but the city councilors were the actual decisionmakers and have provided reasons why.

Those reasons may have been fair or unfair, but the evidence even in the light most favorable to the Plaintiff does not suggest that such reasons were a subterfuge. Cf. Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1152 (10th Cir. 2008) (noting that where a provision (such as Title VII) "prohibits discrimination on the basis of certain, invidious factors, [e]mployers are free to terminate at-will employees for any other reason—however unfair, unwise, or even erroneous-so long as it is not unlawful."). It is also apparent that whatever role the mayor played in the termination, his recommendation, and the action of the city council would have been the same, regardless of Plaintiff's relationship with his then-wife and her advocacy in the underlying election challenge. See Mount Healthy City Ch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that (1) Plaintiff's Motion for Partial Summary Judgment that Marvin Vigil Could Only Be Terminated for Cause, by the City Manager and With Written Reasons filed June 17, 2008 (Doc. 66) is denied;

(2) Defendant City of Espanola's Motion for Summary Judgment as to Plaintiff's Breach of Contract and Due Process Counts filed July 15, 2008 (Doc. 74) is granted;

(3) Defendant City of Espanola's Motion for Summary Judgment as to the Remaining Retaliation Claims filed July 15, 2008 (Doc. 73) is granted;

(4) The November 12, 2008 Pretrial Conference and the January 5, 2009 Jury Trial are hereby vacated.

  DATED this <u>29th</u> day of October 2008, at Santa Fe, New Mexico.

                */s/ Paul Kelly, Jr.*
                United States Circuit Judge
                Sitting by Designation

Counsel:

Paul D. Mannick, Coppler & Mannick, P.C., Santa Fe, New Mexico, for Plaintiff.

Aaron C. Viets and Soha F. Turfler, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for Defendant City of Espanola.